THE EXCELSIOR SAVINGS BANK OF THE CITY OF NEW YORK, Respondent, *v.* LOUIS COHEN and Others, Defendants, Impleaded with LOUIS SCHILT and Others, Appellants.

First Department, March 23, 1917.

Mortgage — foreclosure — execution of individual collateral bonds to induce plaintiff to accept assignment of mortgage — when obligors not discharged by agreement of obligee to continue mortgage as open mortgage — interest.

Appeal from a judgment for a deficiency in a suit of foreclosure of a mortgage on real estate. It appeared that the defendants, in order to induce the plaintiff bank to accept an assignment of the mortgage, individually executed collateral bonds conditioned for the payment· of the original bonds, it being expressly stated that the collateral bonds were to remain in full force and effect until the actual payment of the mortgage debt, and that in case the mortgaged property was sold, or the time of the original mortgagor to pay was extended, or the terms of payment modified, the defendants should continue liable to pay the sum secured by the mortgage according to the tenure of their collateral bonds, unless expressly released and discharged from such bonds in writing.

Evidence examined, and *held*, that an agreement by which the plaintiff extended the time of payment in consideration of an agreement by the parties liable on the mortgage to reduce the debt by certain specified payments and to pay an increased rate of interest in consideration of such extension, did not amount to a release of the defendants upon their individual collateral bonds, but merely amounted to an agreement to treat the mortgage as an open mortgage.

*Held, further*, in view of the circumstances, that the liability of the defendants on their individual bonds should be computed on the basis of five per cent rather than upon the increased rate of interest.

APPEAL by the defendants, Louis Schilt and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of March, 1916, upon the decision of the court after a trial at the New York Special Term.

The judgment was for a deficiency in a foreclosure action. Notice is given of an intention to bring up for review an order entered in said clerk's office on the 29th day of December, 1915, granting plaintiff's motion for judgment on the pleadings.

*Isidor Enselman* and *Joseph Gans,* for the appellants.

*John A. Garver,* for the respondent.

SMITH, J.:

On January 21, 1904, one Louis Cohen executed and delivered a bond and mortgage to the New York Mortgage and Security Company securing the payment of $60,000 with interest at five per cent, the principal falling due January 22, 1909. This bond and mortgage was afterwards assigned to James Walsh, and upon January 8, 1906, Walsh assigned the same to the plaintiff. At that date in order to induce the plaintiff to accept the mortgage, three individual collateral bonds were executed by the defendants Brill, Levy and Schilt, conditioned for the payment of the original bond, and were delivered to the plaintiff. At that time Brill was the owner of the premises, and the wife of Levy and the wife of Schilt were also beneficially interested in the fee, which was held by Brill. Each of the said collateral bonds contained this provision: "It is expressly understood and agreed by and between the parties hereto that this obligation shall be and remain in full force and effect and in nowise be impaired until the actual payment of said sum to said obligees. And in case of a sale or transfer of any property embraced in a mortgage collateral to this bond and in case of any agreement or stipulation between the owner or owners of said mortgaged property and the said obligees, extending the time or modifying the terms of payment above recited, then the above-mentioned obligor shall continue liable to pay the sum above secured according to the tenure of any such agreement unless expressly released and discharged in writing by the above-named obligees."

Brill afterwards conveyed the title to one Samuels, who held the fee in 1913. At that time the bank called for a payment of $7,500 upon the bond and mortgage. Negotiations were then had between Samuels and the plaintiff bank and an agreement reached which is claimed by the defendants appealing to release them from further liability upon the collateral bonds. The witness Roome, the president of the plaintiff bank, conducted the negotiations on behalf of the plaintiff. He swears that the

First Department, March, 1917.          [Vol. 176.

bank was insisting upon the payment of $5,000 and that Samuels could not arrange that, "so then it was agreed that we would allow it to run as an open mortgage provided interest was paid at 5½ per cent until it was reduced to an amount satisfactory to the bank. Q. That statement was clearly made to him, that it was to remain as an open mortgage? A. Yes; that was our understanding of it." It was talked between the parties that $750 was to be paid semi-annually upon the principal indebtedness until it was reduced to $52,500, and until then the rate of interest was to be five and one-half per cent; after it was so reduced that the rate of interest was to be five per cent. This arrangement, however, for a yearly reduction is perfectly consistent with the testimony of Roome that the mortgage was to remain an open mortgage. Nor is the evidence of Samuels necessarily inconsistent with this testimony. He swears that the bank called for $7,500. Further, "I told Mr. Roome I received a communication from the Bank demanding the payment of $7,500, and Mr. Roome, I believe, replied that they would be willing to extend the mortgage — at least they would be willing to wait for payment of the $7,500 provided I paid off $750 semi-annually until the mortgage was reduced to $52,500, and provided also that I paid an increase in the rate of interest. Q. Let me understand you a little more clearly. Was there anything said as to how long they would wait for the payment of this mortgage? * * * A. That it was to be paid down to $52,500. Q. What did he say as to how much time they would give you in which to pay it? A. That is five years' time. Q. Was the period of five years mentioned at that time? A. Well, I am not certain of that whether a period of time was mentioned, but a payment of $7,500 was demanded, and Mr. Roome said that they would accept $750 semi-annually until the mortgage was reduced to $52,500 — that means five years. Q. What, if anything, was said with regard to the rate of interest? A. And also that the rate of interest would be increased. Q. Increased to what? A. To 5½ per cent." The testimony of this witness is significant where he swears, "Mr. Roome, I believe, replied that they would be willing to extend the mortgage — at least they would be willing to wait for payment of the $7,500 provided I paid off $750 semi-annually until the

mortgage was reduced to $52,500." Five years was not mentioned as the extended time of the mortgage. Samuels does not deny the testimony of Roome that the mortgage was to remain an open mortgage. In our judgment, the defendants have not met the requirement of the law that they must make clear to the court that the agreement to increase this interest was an agreement made upon valid consideration to extend the time for a definite period. . The bank did not need the money; was presumably loaning moneys at all times; it was willing to wait, provided these payments were made upon the principal of the mortgage, thus giving better value to the security, but upon the agreement that it was to be an open mortgage.

The provisions of the surety bonds hereinbefore quoted are very broad. The Special Term has held that within the surety's stipulation the plaintiff was authorized to extend the time and increase the rate of interest paid upon the principal obligation. There is much that might be said in support of this construction. If, as we view the case, however, there was no extension of time to any definite period, it is not necessary to determine whether such an extension if made and the increase in the interest rate would come within the permission of the surety bonds. Our conclusions lead to a modification of the judgment by directing that the deficiency as against the surety should be computed on the basis of five per cent from the time of the default in payment, and a reversal of the ninth finding of fact as without support of the evidence. The judgment, as thus modified, should be affirmed, with costs.

CLARKE, P. J., SCOTT, DAVIS and SHEARN, JJ., concurred.

Judgment modified as stated in opinion, and as modified affirmed with costs. Order to be settled on notice.